PRI PIPE SUPPORTS, Plaintiff,

v.

TENNESSEE VALLEY AUTHORITY, Defendant.

No. EC 80–70–OS–O.

United States District Court, N. D. Mississippi, E. D.

Aug. 7, 1980.

**6.** Pub.L. 94–566 (94th Cong. 2d Sess., 1976).

**7.** *See* 118 Cong.Rec. 36952, 119 Cong.Rec. 22397 (Remarks of Rep. Mills).

David L. Reynolds, Reynolds & Mockbee, Jackson, Miss., for plaintiff.

Herbert S. Sanger, Jr., Gen. Counsel, James E. Fox, Asst. Gen. Counsel, Robert C. Glinski, Edwin W. Small, Knoxville, Tenn., for defendant.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

This action is before the court upon the defendant's motion to dismiss, or, in the alternative, for summary judgment. Since matters outside the pleadings have been presented in support of and in opposition to the motion, it will be treated as one for summary judgment. Rule 12(b), Fed.R. Civ.P. Pursuant to Rule 56(c), the motion is now ripe for decision.[1]

■ The plaintiff in this action, PRI Pipe Supports, is an Oklahoma Corporation. The defendant, Tennessee Valley Authority (TVA), is a government corporation created by Congress to carry out certain functions related to the production and distribution of energy, and the conservation of natural resources. 16 U.S.C. §§ 831, et seq. TVA is an agency performing wholly governmental services, and is an instrumentality of the United States. *TVA v. Kinzer*, 142 F.2d 833 (6th Cir. 1944); *TVA v. Mason Coal, Inc.*, 384 F.Supp. 1107 (E.D.Tenn.1974), *aff'd*, 513 F.2d 632 (6th Cir. 1975).

The plaintiff's complaint alleges that it submitted a bid to TVA for a supply of nonseismic pipe supports for the Yellow Creek Nuclear Plant located near Iuka, Mississippi. PRI contends that its bid was the lowest of those submitted; the contract, however, was awarded by TVA to Bergen-Paterson Pipe Support Corporation, a competitor of PRI. As a result of TVA's action, PRI alleges that it has suffered damages in an undeterminable amount (but in excess of $10,000), and it requests the court to award damages against TVA, or in the alternative, to declare the Bergen-Paterson contract null and void. Jurisdiction is founded upon 28 U.S.C. § 1331 and 5 U.S.C. § 702.

TVA has now filed its motion for summary judgment, and has supported the motion with the affidavit of Charles H. Strickland, Chief of the Materials Procurement Branch of the Division of Purchasing. Mr. Strickland's affidavit shows the following relevant facts: the invitation to the bid which is the subject of this action was issued by TVA on April 16, 1979. Ten bids were received, and were opened on May 23, 1979. After the bids were evaluated, in order to determine whether or not they were responsive to the established conditions,[2] the bid was awarded to Bergen-Paterson as the

---

1. This court is aware of its duty to comply strictly with the procedural requirements of Rule 56. That is, the adverse party must be given at least 10 days notice of the motion before a hearing, and must be given the opportunity to serve opposing affidavits "prior to the day of the hearing." A failure to adhere to these strict requirements constitutes reversible error. *See In re Hailey*, 621 F.2d 169, 171–72 (5th Cir. 1980); *Hanson v. Polk County Land, Inc.*, 608 F.2d 129, 131 (5th Cir. 1979). Since the parties did not request oral argument of this motion pursuant to the Local Rules of this court, and since a hearing was not held, the court informed counsel for both parties that it would consider the case to be submitted as of this date. Such notice satisfied the provisions of Rule 56, and this decision is based upon the record as it exists on August 7, 1980.

2. 16 U.S.C. § 831h(b), which provides for the manner in which purchases and contracts shall be made by TVA, states that "in comparing bids and in making awards [TVA] may consider such factors as relative quality and adaptability of supplies or services, the bidder's financial responsibility, skill, experience, record of integrity in dealing, ability to furnish repairs and maintenance services, the time of delivery or performance offered, and *whether the bidder has complied with the specifications*." (emphasis added). Pursuant to its statutory authority, TVA attached certain conditions to the bid, and evaluated each bid to ensure compliance with those conditions before making an award.

lowest *responsive* bidder. The bid from the plaintiff, PRI was rejected as nonresponsive. Mr. Strickland states that the bid was nonresponsive, and therefore unacceptable, for two reasons. First, paragraph 23(a) of the conditions of bid states that bids are solicited from companies "that will agree to perform as labor surplus area concerns." This condition is imposed in order to carry out the mandate of the Small Business Act, which gives priority in awarding government contracts to those concerns that operate in areas of concentrated unemployment. 15 U.S.C. § 644(d), (e). Under the definitions contained in paragraph 23(b) of the conditions, the amount of costs incurred by a company in a labor surplus area, as identified by the Department of Labor, must exceed 50 percent of the bid price. Mr. Strickland states that 85.7 percent of the Bergen-Paterson bid was to be performed in Moulton, Alabama, an eligible labor surplus area. *See Dept. of Labor, Area Trends in Employment and Unemployment* 5 (Jan.-April, 1979). PRI, however, stated that 100 percent of its costs would be incurred in Muskogee, Oklahoma, which is not on the list of eligible areas. *Id.* at 20. It was, therefore, determined that PRI's bid was nonresponsive in this category.

Secondly, paragraph 15 of the special conditions states that no subsistence or transportation expenses would be paid for the contractor's engineers and/or mechanics after they have reported to the work site. PRI's bid submitted a daily rate for the services of field engineers, but added "plus all living and travel expenses". Mr. Strickland states that this was determined to be contrary to the special condition.

In opposition to TVA's motion, PRI submitted an affidavit of Monty G. Marshall, President of PRI. He states that the inclusion in the bid of all travelling and living expenses was "an oversight on PRI's part that is minor in nature". He also states that the factory where the pipe supports would have been manufactured was in McIntosh County, Oklahoma, which is an eligible labor surplus area. The real reason for the rejection of PRI's bid, according to Mr. Marshall, was "that TVA did not consider PRI qualified to perform the contract. . . ."

A preliminary question which must be addressed is whether or not the plaintiff has standing to bring this action. This issue is usually a preliminary one which is resolved before the court proceeds to the merits. In this context, however, the defendant raises the issue in a motion which is treated as one for summary judgment. The court will, therefore, analyze this question under the standards of Rule 56, to determine whether or not the plaintiff has suffered a legally cognizable injury.

It is now settled law in this circuit, that disappointed or unsuccessful bidders for government procurement contracts have standing to challenge the award, provided they meet certain legal criteria. *Kinnett Dairies Inc. v. Farrow*, 580 F.2d 1260, 1265 (5th Cir. 1978); *Hayes International Corp. v. McLucas*, 509 F.2d 247, 254–58 (5th Cir.), *cert. denied*, 423 U.S. 864, 96 S.Ct. 123, 46 L.Ed.2d 92 (1975). As the court stated in *Hayes*, it was once thought that since statutes relating to procurement contracts were enacted for the benefit of the public, an individual bidder had no "legal interest" to be protected. *Perkins v. Lukens Steel Co.*, 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940). In the last forty years, however, the doctrine of standing has undergone dramatic changes, such that the decision in *Perkins* may no longer be viable. *See also, Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859 (D.C.Cir.1970).[3]

Consistent with these recent changes in the concept of standing, the Fifth Circuit has held that a disappointed bidder must meet

the twin tests of demonstrating 'injury in fact' and asserting an interest 'arguably within the zone of interests to be protected or regulated' by the statute or regulation in question.

---

**3.** For a general discussion of the Supreme Court's analysis of standing, see *Loewen v.* *Turnipseed*, 488 F.Supp. 1138, 1150–51 (N.D. Miss.1980).

*Kinnett Dairies, Inc. v. Farrow*, 580 F.2d at 1265; *see also Cincinnati Electronics Corp. v. Kleppe*, 509 F.2d 1080, 1083–85 (6th Cir. 1975). The statute in question in this case is 16 U.S.C. § 831h(b), the relevant portion of which is set out in footnote 2, *supra*. As these cases point out, the court must look to each particular statute in order to determine whether or not its purpose is to protect interests similar to the plaintiff's.

This court agrees with the analysis of § 831h made by the court in *GF Business Equipment, Inc. v. TVA*, 430 F.Supp. 699, 702 (E.D.Tenn.1975). In that case, the court held that the plaintiff, a disappointed bidder, could not rely on § 831h to indicate a congressional intent to protect his interests. Specifically, the court stated that it was "unable to find an expression of congressional policy which supports the contention that an unsuccessful bidder for a TVA contract is arguable within the zone of interests to be protected by 16 U.S.C. § 831h." 430 F.Supp. at 703. The legislative history of this statute clearly shows that it was not designed by Congress to create a legal or proprietary interest in all bidders for TVA contracts, but was instead designed to vest in TVA complete discretion in the method of awarding bids. For these reasons, it is clear that § 831h does not place the plaintiff within the "zone of interests" to be protected.

Plaintiff relies upon the Administrative Procedure Act, 5 U.S.C. § 701 et seq., as conferring standing to sue. That act provides, in pertinent part, that

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

5 U.S.C. § 702. As the act has been interpreted, however, it does not do away with the requirement that one meet the two-prong test of *Hayes* and *Kinnett*. As the Sixth Circuit stated in *Kleppe* :

Standing is conferred by [§ 702] only when a relevant statute indicates congressional intent that the person or firm seeking review comes within the zone of interests sought to be regulated or protected. Absent such a congressionally created exception, the general rule of *Perkins v. Lukens Steel, supra*, that a disappointed bidder has no legally enforceable right against the government's award of a procurement contract retains its validity.

509 F.2d at 1086. PRI relies upon both § 831h and certain federal regulations dealing with labor surplus areas, as creating a legally protectable interest. Admittedly, one of the stated policies of these regulations is to give priority to contractors performing in certain areas. The undisputed facts, however, show that PRI's bid was unresponsive in this regard. It is not an injury resulting from a violation of this policy about which PRI is complaining; rather, it is an injury resulting from the fact that its bid was not selected. This injury alone is insufficient to confer standing.

Moreover, 5 U.S.C. § 701(a) provides that the Administrative Procedure Act does not apply where "agency action is committed to agency discretion by law." The court can think of no stronger statutory language vesting an agency with discretion than that found in § 831h(b). As an example of the legislative history affirming this discretion, TVA points to the Contract Disputes Act of 1978. This statute, which was designed to resolve disputes relating to government procurement contracts, exempts TVA from its operation. *See* 41 U.S.C. § 607(h). The purpose of such an exemption was

to maintain the status quo regarding the traditional flexibility and independence of the Tennessee Valley Authority. . . It is recognized that the Tennessee Valley Authority has highly specialized purchasing needs and that it must have the freedom to exercise its business judgment in individual instances to be able to maintain the efficiency of its operations.

124 Cong.Rec.S. 18, 640–41 (daily ed. Oct. 12, 1978) (remarks of Sen. Byrd). For these reasons, the court concludes that neither 16 U.S.C. § 831h, nor 5 U.S.C. § 702, confer standing on PRI to challenge TVA's contract award to Bergen-Paterson.

■ Even if the plaintiff were to overcome this initial obstacle, the court would conclude that TVA is entitled to a judgment as a matter of law. The material facts relating to PRI's noncompliance with the conditions are not in dispute. PRI failed to meet the conditions in the two areas previously discussed, and TVA rejected the bid for that reason. These defects were neither trivial nor negligible, as PRI contends, but went to the substance of the contract.

It is apparent from the clear language of § 831h(b) that TVA is at liberty to place conditions on its bid invitations, and to reject bids which do not conform to such conditions. This court's review of such discretionary actions is quite limited. As the Fifth Circuit stated in *Kinnett Dairies*, a court should not hastily impose its own notions of proper procedure upon an agency which has been given substantive authority by Congress:

> Courts reviewing government procurement decisions should respect the wide discretion accorded to contracting officers in their evaluation of bids and in their application of procurement regulations.

580 F.2d at 1272. The court also stressed that decisions of the Comptroller General in this area are to be given great weight. Defendant has cited a number of these decisions, which state that the responsiveness of a bid is to be determined when the bid is opened, and not by reference to any subsequent explanations. *See, e. g.*, Comp.Gen. Dec. B–156374 (Sept. 3, 1965). TVA's exercise of discretion in this case was clearly reasonable, and did not violate the applicable statute. Under the circumstances, TVA is entitled to a judgment as a matter of law, and an order will be entered accordingly.