**FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, Plaintiff–Appellant,**

v.

**Jerrie R. NICHOLS, individually and dba: Bay Business, King & I Shoppe, Defendant,**

**and**

**Downey Savings & Loan Association, Defendant–Appellee.**

No. 88–6040.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 3, 1989.

Decided Sept. 15, 1989.

John J. Wessling, Federal Deposit Ins. Corp., Legal Div., Irvine, Cal., for plaintiff-appellant.

Mark E. Aronson, Anderson, McPharlin & Conners, Los Angeles, Cal., for defendant-appellee.

Before WALLACE and FLETCHER, Circuit Judges, and MUECKE,* District Judge.

WALLACE, Circuit Judge:

The Federal Deposit Insurance Corporation (FDIC) appeals from a judgment of dismissal in favor of defendant Downey Savings and Loan Association (Downey). The district court's subject matter jurisdiction, which is disputed in this case, was invoked under 12 U.S.C. § 1819 (Fourth). We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We reverse and remand.

* Honorable C.A. Muecke, Senior United States District Judge, District of Arizona, sitting by

## I

The procedural backdrop to this case is somewhat complicated. On January 27, 1983, Heritage Bank (Heritage), the FDIC's predecessor in interest, filed an action in California state court against various defendants: Nichols, both individually and doing business as King & I Shoppe and Bay Business; Downey, Nichols's employer; Citibank; and ten Does. Heritage sought to recover $198,121.23 it had allegedly advanced in October 1982 to Nichols, Bay Business and King & I Shoppe on checks drawn upon Downey. According to Heritage, the checks subsequently were dishonored and returned to Heritage unpaid and marked "undue enrichment."

Heritage's state complaint alleged that Downey had failed adequately to supervise its employee Nichols, thereby allowing her to take possession of bank checks payable to Downey, Nichols, Bay Business, and King & I Shoppe and to present these checks for payment to Heritage. The complaint also alleged that Downey and Citibank had wrongfully dishonored the checks. On the basis of these allegations, Heritage asserted claims for breach of a drawer's contract, wrongful dishonor, negligence, and a common count.

On March 16, 1984, the California Superintendent of Banks, acting pursuant to state law, ordered Heritage closed and took possession of its assets and affairs. See Cal.Fin.Code §§ 3100 et seq. (West 1989). The Superintendent tendered to the FDIC the appointment as receiver of Heritage, which the FDIC, as required by statute, accepted. See 12 U.S.C. § 1821(e); Cal.Fin. Code § 3221 (West 1989). The FDIC as receiver held all of Heritage's assets, including the asset which is the subject of this lawsuit—Heritage's claims against defendants. On August 28, 1985, the FDIC's legal division substituted as Heritage's attorneys of record.

Discovery proceeded in the state action. Under California law, a case which is not brought to trial within five years of its

designation.

commencement is subject to mandatory dismissal. Cal.Civ.Proc.Code § 583.310 (West Supp.1989). With the five-year deadline drawing close, Heritage filed two motions to set the case for trial. Both motions were denied. Heritage's motion to substitute the FDIC as plaintiff was also denied.

On December 23, 1987, Downey filed a motion to dismiss for failure to bring the case to trial within five years. The five-year period would elapse on January 27, 1988. The motion was scheduled to be heard on February 9, 1988. On January 7, 1988, Heritage sought from the California Court of Appeal a writ of mandamus requiring the trial court to set a trial date. The appellate court declined to issue the writ on January 14, 1988.

On February 2, 1988, after the expiration of the five-year period but before the hearing on Downey's motion to dismiss, the FDIC in its capacity as receiver sold the claims to the FDIC in its corporate capacity. This procedure is authorized by statute. *See* 12 U.S.C. § 1823(d), (e). As a result of this transaction, Heritage and the FDIC as receiver no longer held any interest in the asset and therefore voluntarily dismissed the state case without prejudice on February 5, 1988.

On the same day that the dismissal was entered in state court, the FDIC in its corporate capacity filed this action in federal court. The FDIC's complaint contained claims for wrongful dishonor of checks, negligence, and money had and received. The defendants were the same as in Heritage's state court action with the exception of Citibank and the Does, which were omitted from the federal complaint. The district court's subject matter jurisdiction was invoked under 12 U.S.C. § 1819 (Fourth), which grants original jurisdiction of "[a]ll suits of a civil nature at common law or in equity to which the [FDIC as] Corporation shall be a party."

Nichols failed to answer the complaint and her default was entered. On March 15, 1988, Downey moved for a judgment on the pleadings, and in the alternative for dismissal on several grounds. In support of its motion to dismiss, Downey argued that the intra-FDIC transaction was a "sham" meant solely to circumvent the state-law time limits, and that the FDIC had engaged in improper forum shopping. Alternatively, Downey argued that the FDIC's claims should be dismissed because the statute of limitations had run. A hearing on the motion was held on April 11, 1988.

On April 29, 1988, the district court granted Downey's motion to dismiss. The court reasoned that the FDIC's "actions in voluntarily dismissing an identical lawsuit in State Court only to bring it in Federal Court indicates improper forum shopping." The court concluded that under these circumstances, it would "decline[] to exercise its jurisdiction."

## II

Downey moved for dismissal on two alternative grounds: (1) lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1); and (2) failure to state a claim for which relief could be granted, Fed.R.Civ.P. 12(b)(6). Simultaneously, Downey also moved pursuant to Fed.R.Civ.P. 12(c) for a judgment on the pleadings. The district court acted upon Downey's "Motion to Dismiss." The key to its order is the statement that it "declined to exercise its jurisdiction" since the FDIC's action's constituted "improper forum shopping." The district court apparently concluded that it had subject matter jurisdiction, but declined to exercise it. We interpret the order, therefore, as a decision to *abstain* from jurisdiction despite the presence of proper subject matter jurisdiction. We will address the issues of subject matter jurisdiction and abstention in turn.

## A.

■ We review independently the district court's assertion of subject matter jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989). When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the district court "is not restricted to the face of the plead-

ings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *Id.* Here, however, the district court apparently considered only the pleadings. Under these circumstances, where the district court did not put the FDIC to its full proof on the jurisdictional issue, we need only consider whether the FDIC made out a prima facie case for the existence of subject matter jurisdiction. *Societe de Conditionnement en Aluminium v. Hunter Engineering Co.*, 655 F.2d 938, 941–42 (9th Cir.1981).

"The FDIC is an instrumentality created by Congress to promote stability and restore and maintain confidence in the nation's banking system." *FDIC v. Bank of Boulder*, 865 F.2d 1134, 1136 (10th Cir. 1988) (*Bank of Boulder*). To achieve these goals, the FDIC acts in its corporate capacity to insure bank deposits, undertaking an obligation to pay depositors when an insured bank fails. *Id.; see also FDIC v. Sumner Financial Corp.*, 602 F.2d 670, 679 (5th Cir.1979) (*Sumner*). In addition, the FDIC is authorized by statute to act as a receiver for an insolvent state bank under certain circumstances. 12 U.S.C. § 1821(e). When acting as a receiver for an insolvent state bank, the FDIC possesses "all the rights, powers and privileges granted by State law to a receiver of a State bank." *Id.* Thus, under federal law, the FDIC is empowered to act in " 'two entirely separate and distinct capacities' in proceedings involving an insured state bank." *Sumner*, 602 F.2d at 679, *quoting FDIC v. Abraham*, 439 F.Supp. 1150, 1151 (E.D.La.1977); *see also FDIC v. Glickman*, 450 F.2d 416, 418 (9th Cir.1971) (recognizing FDIC's "dual capacity as federal insurer of deposits and as liquidating agent for the bank"); *FDIC v. de Jesus Velez*, 678 F.2d 371, 374 (1st Cir.1982) (*Velez*) ("It seems apparent that the FDIC must be permitted to operate in a dual capacity simultaneously, as a receiver and an insurer, to carry out its functions as a receiver, liquidator, and insurer.").

Under 12 U.S.C. § 1819 (Fourth), Congress has granted the FDIC the power "[t]o sue and be sued, complain and defend, in any court of law or equity, State or Federal." 12 U.S.C. § 1819 (Fourth). Section 1819 (Fourth) further provides that "[a]ll suits of a civil nature at common law or in equity to which the [FDIC as] Corporation shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy...." *Id.* Section 1819 (Fourth)'s grant of subject matter jurisdiction is "very expansive ..., evidencing Congress' desire that cases involving FDIC should generally be heard and decided by the federal courts." *Sumner*, 602 F.2d at 678.

Section 1819 (Fourth)'s "unrestricted grant of jurisdiction over civil actions to which the FDIC is a party is limited only by the proviso language that follows." *In re Southern Industrial Banking Corp.*, 872 F.2d 1257, 1260 (6th Cir.1989). In order for the sole exception to section 1819 (Fourth)'s jurisdictional grant to apply, three conditions must exist:

> First, the FDIC must be a party to "such suit" in its capacity as a receiver of a state bank.... Second, the suit must involve only the rights or obligations of depositors, creditors, stockholders, and the state bank itself.... Third, the suit must involve such rights or obligations under state law.

*Id.*

We need go no farther than the first requirement for the exception. The parties agree that the FDIC *is* a party to this suit in its corporate capacity and not as a receiver of a state bank. The fact that the FDIC in its corporate capacity purchased the right to sue from itself in its capacity as receiver of a state bank does not alter this conclusion. The FDIC is expressly authorized by statute to purchase assets in its corporate capacity from itself in its capacity as receiver. *See* 12 U.S.C. § 1823(e); *see also Velez*, 678 F.2d at 374; *FDIC v. Godshall*, 558 F.2d 220, 222 & n. 4 (4th Cir.1977) (*Godshall*). In addition, "for purposes of jurisdiction under § 1819, the FDIC's capacity as a purchaser does not change to a receiver merely because the

seller was the FDIC acting as a receiver." *Velez*, 678 F.2d at 374; *see also Bank of Boulder*, 865 F.2d at 1137; *Gunter v. Hutcheson*, 674 F.2d 862, 874 (11th Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982); *FDIC v. Citizens Bank & Trust Co.*, 592 F.2d 364, 367 (7th Cir.), *cert. denied*, 444 U.S. 829, 100 S.Ct. 56, 62 L.Ed.2d 37 (1979); *FDIC v. Ashley*, 585 F.2d 157, 160–64 (6th Cir.1978), *Godshall*, 558 F.2d at 223. Thus, the presence of an intra-FDIC transfer does not deprive the district court of subject matter jurisdiction. Nor does the fact that the asset transferred was the right to sue on claims alter this conclusion. *FDIC v. Braemoor Associates*, 686 F.2d 550, 553 (7th Cir.1982), *cert. denied*, 461 U.S. 927, 103 S.Ct. 2086, 77 L.Ed.2d 297 (1983). Although Downey argued in the district court that the transaction was a sham, on appeal Downey has conceded that ·the transfer was not "a sham or otherwise invalid."

We conclude that the FDIC has made out a prima facie case that subject matter jurisdiction exists and that this action does not fall under the exception to section 1819 (Fourth). The district court therefore did not err in concluding that it possessed subject matter jurisdiction over this action.

### B.

■ We next consider whether the district court properly declined to exercise its jurisdiction. We generally review decisions to abstain for abuse of discretion. *American International Underwriters, Inc. v. Continental Insurance Co.*, 843 F.2d 1253, 1256 (9th Cir.1988) (*American International*); *McIntyre v. McIntyre*, 771 F.2d 1316, 1319 (9th Cir.1985) (*McIntyre*). Abuse of discretion review in the abstention context, however, "should not be confused with the broader abuse of discretion test used in other matters, such as rulings on certain evidentiary issues." *American International*, 843 F.2d at 1256. In abstention cases, the district court is required to exercise its discretion "within the narrow and specific limits prescribed by the particular abstention doctrine invoked." *McIntyre*, 771 F.2d at 1319. The district

court does not have discretion to abstain in a case that does not meet the abstention requirements. *Id.*, *see also C–Y Development Co. v. City of Redlands*, 703 F.2d 375, 377 (9th Cir.1983).

Downey does not contend that this case involves *Younger*, *Pullman* or *Burford* abstention. *See Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814–17, 96 S.Ct. 1236, 1244–46, 47 L.Ed.2d 483 (1976) (*Colorado River*) (explaining doctrines of *Younger*, *Pullman*, and *Burford* abstention). The only other basis for declining to exercise jurisdiction would be under the "exceptional circumstances" doctrine of *Colorado River*. *See id.* at 817–21 (announcing factors to be considered in determining whether to decline jurisdiction on this basis); *see also Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 19–27, 103 S.Ct. 927, 938–43, 74 L.Ed.2d 765 (1983) (*Cone*) (applying and supplementing *Colorado River* factors). The Supreme Court has made it clear that the *Colorado River* doctrine is not a recognized form of abstention. *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246; *see also Nakash v. Marciano*, 882 F.2d 1411, 1415 & n. 5 (9th Cir.1989) (amended Aug. 23, 1989) (*Nakash*).

Downey does not explicitly argue that *Colorado River* deference is appropriate in this case. Instead, Downey argues that the district court properly declined to exercise jurisdiction because FDIC was engaged in "forum shopping." We are aware of no doctrine of abstention or deference of jurisdiction which authorizes federal courts to decline to exercise jurisdiction on this ground alone.

It is true that several of our recent cases involving *Colorado River* deference of jurisdiction have held that "forum shopping" may be considered as one among numerous factors relevant to determining whether to defer. *Nakash*, 882 F.2d at 1415; *American International*, 843 F.2d at 1259, 1261. However, the Supreme Court's decisions also make it clear that *Colorado River* deference, which ·is grounded on considerations of "wise judicial administration" and "conservation of judicial resources," is

available only "in situations involving the *contemporaneous* exercise of concurrent jurisdictions, either by federal courts or by state and federal courts." *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246 (emphasis added); *see also id.* at 818, 96 S.Ct. at 1246 (describing appropriateness of permitting "dismissal of a federal suit due to the presence of a concurrent state proceeding"); *Cone,* 460 U.S. at 16, 103 S.Ct. at 937 (referring to "the decision whether to dismiss a federal action because of parallel state-court litigation"). In this case, there was no concurrent or pending state court proceeding when Downey moved for dismissal or when the district judge declined to act. The state action was dismissed without prejudice (1) on the same day the FDIC's federal action was filed and (2) almost three months before the district court's dismissal. It was therefore an abuse of discretion to decline jurisdiction under the *Colorado River* doctrine. *See also Cone,* 460 U.S. at 28, 103 S.Ct. at 943 ("When a district court decides to dismiss or stay under *Colorado River,* it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all.").

Downey points to two cases decided by the same district court, however, to support its argument that abstention for forum shopping alone is proper. *See McDermott v. Toyota Motor Sales Co.,* 487 F.Supp. 484 (E.D.Tenn.1980); *Eager v. Kain,* 158 F.Supp. 222 (E.D. Tenn.1957). *McDermott,* a product liabilities case brought in diversity, was the only case relied on by the district court. McDermott had filed a prior, identical action in state court, and defendants had moved for summary judgment. 487 F.Supp. at 485. Although defendants' motion was denied "out of an abundance of caution," the state judge indicated that he would look favorably upon defendants' motion for directed verdict after trial unless McDermott brought forward additional facts. *Id.* McDermott then took a voluntary non-suit and reinstituted the action in federal court.

Relying primarily on *Eager,* the district judge in *McDermott* abstained on the grounds that McDermott had improperly engaged in " 'forum shopping.' " *Id.* at 486. Similarly, in *Eager* the court dismissed the action of a plaintiff who had taken a non-suit at the close of trial in an identical action in state court. The court in *Eager* cited forum shopping as the reason for its abstention. 158 F.Supp. at 223.

We conclude that *McDermott* and *Eager* were wrongly decided. We do not believe they can be squared with the Supreme Court's abstention doctrines or its teaching that abstention from federal jurisdiction "is the exception, not the rule." *Colorado River,* 424 U.S. at 813, 96 S.Ct. at 1244. Federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Id.* at 817, 96 S.Ct. at 1246. For this reason, "abstention from the exercise of federal jurisdiction is considered 'an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.' " *American International,* 843 F.2d at 1256, *quoting Colorado River,* 424 U.S. at 813, 96 S.Ct. at 1244.

We conclude that the district judge abused her discretion in abstaining based on forum shopping alone.

### III

On appeal, the parties have urged us to reach other issues which did not form the basis of the district court's dismissal. In particular, Downey urges us to affirm the dismissal on the grounds that the statute of limitations has run on the FDIC's claims. The parties disagree, however, about the applicable statute of limitations. They also disagree about a host of related issues. Under these circumstances, we decline to reach these matters upon which the district court did not rule. On remand, the parties will be free to pursue these issues in the district court.

REVERSED AND REMANDED.